# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re**  <br><br>MICHAEL MAT WARR,  <br><br>**Debtor.** | **Bankruptcy Case**  <br>**No. 08-00151-JDP** |

_____

| | |
|---|---|
| UNITED STATES TRUSTEE,  <br><br>**Plaintiff,**  <br>vs.  <br><br>MICHAEL MAT WARR,  <br><br>**Defendant.** | Adv. Proceeding No. 08-6041 |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

      Gary L. McClendon, Office of the U.S. Trustee, Boise, Idaho, Attorney for Plaintiff.

      Randal J. French, BAUER AND FRENCH, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

*Introduction*

Plaintiff Robert D. Miller Jr., in his capacity as Acting United States Trustee ("Plaintiff"), alleges that Defendant Michael Mat Warr ("Defendant"), a chapter 7 debtor, knowingly and fraudulently made false oaths and accounts in connection with his bankruptcy case such that he should be denied a discharge under § 727(a)(4)(A)[1] of the Bankruptcy Code. The Court conducted a trial in this adversary proceeding on December 4, 2008 at which both parties presented evidence and testimony. At the conclusion of the evidence, the parties presented oral arguments, and the Court deemed the issues under advisement. Having carefully considered the record, the evidence and testimony, and the arguments of the parties, this Memorandum constitutes the Court's findings of fact and conclusions of law, and disposition of the issues. Rules 9014, 7052.

*Facts*

Defendant is a licensed real estate agent in Idaho. Defendant's wife,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

Mindy Warr, is a stay-at-home mother. At some point, Ms. Warr became interested in opening a day care business. She consulted her friend Richard Stokes ("Stokes") about her plans for the business, but explained that she lacked sufficient capital to get her venture started. Stokes expressed his willingness to assist with getting the project underway, and after speaking with his business partner, John Savoy ("Savoy"), the two agreed to loan Defendant and Ms. Warr $50,000. In January 2007, Stokes and Savoy gave Ms. Warr a check, drawn from an account at Precision Steel & Gypsum.[2] Neither Stokes nor Savoy required Defendant or his wife to sign a contract or promissory note in connection with the loan. The Warrs testified that at the time the loan was extended, there was no fixed repayment schedule or interest rate, but that they were expected to repay the loan as they were able to do so.

    Ms. Warr deposited the check into the Warrs' joint savings account. The funds remained there untouched for several months while Ms. Warr

---

[2] Apparently, both Stokes and Savoy have ownership interests in Precision Steel & Gypsum.

MEMORANDUM OF DECISION - 3

continued her investigation into the day care business.  At the same time, as a result of a decline in the real estate market, the Warrs were struggling to remain current on their bills.  They asked Stokes for permission to use some of the loan proceeds to pay bills and supplement their income, and Stokes agreed.  By the fall of 2007, the entire $50,000 had been spent.  Defendant testified that most of the money was used to pay the costs for the house they were constructing in Nampa, but he could not give an exact dollar amount.

In the fall of 2007, the creditors' expectations regarding the repayment of the loan changed.  Stokes approached Ms. Warr and explained that he and Savoy would need the loan repaid in the near future.  Later, he called and required that the money be repaid by the end of November, 2007.

Defendant and his wife explained their predicament to Gary Killian ("Killian"), Ms. Warr's father.  Shortly after their meeting, Killian gave Ms.

MEMORANDUM OF DECISION - 4

Warr a cashier's check for $55,000[3] with the explicit instructions that she immediately pay Stokes and Savoy. Ms. Warr complied. She deposited the check into the Warrs' joint bank account, and had two separate cashier's checks drawn, each for $25,000, one for Stokes, and one for Savoy. She drove to Boise to deliver the checks, and finding Stokes and Savoy out of their office, gave the checks to their assistant.[4]

On January 31, 2008, Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.[5] Defendant did not disclose Killian as a creditor in his schedules, and he did not disclose the payments

---

[3] The extra $5,000 was intended to help Defendant and Ms. Warr meet other basic living expenses.

[4] Ms. Warr testified that she obtained and delivered the cashier's checks to Stokes and Savoy on the same day that her father gave her the check for $55,000. Counsel for Plaintiff drew attention to the fact that Killian's check was dated November 19, 2007, but the checks for Stokes and Savoy were dated November 20, 2007. This does not necessarily impeach Ms. Warr's testimony. November 19, 2007 is the date that Killian's check was *issued* by his bank, but not necessarily the day that he *delivered* the check to Ms. Warr. It is certainly plausible that after receiving the cashier's check from his bank, Killian waited until the next day to deliver it to Ms. Warr. Killian did not testify to clarify this point. The precise timing of these events is not material to the outcome of this dispute.

[5] Case No. 08-00151-JDP.

MEMORANDUM OF DECISION - 5

made to Stokes and Savoy in his statement of financial affairs ("SOFA"). Neither the schedules nor the SOFA have ever been amended.

Counsel for Plaintiff and Defendant twice stipulated to extend the deadline to seek denial of discharge under § 727 to allow the parties additional time to investigate and evaluate the issues, and those requests were granted. Bankr. Docket Nos. 34, 46. Plaintiff conducted a Rule 2004 Examination of Defendant on May 19, 2008, and, shortly thereafter, on June 6, 2008, filed the complaint commencing this action.

## *Discussion and Disposition*

Plaintiff contends that, given the facts, Defendant is not entitled to a discharge because he failed to disclose material transactions and information in his schedules and SOFA. The Code provides that a debtor shall receive a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Khalil v. Developers Sur. and Indem. Co. (In re Khalil)*, 379 B.R. 163, 172

MEMORANDUM OF DECISION - 6

(9th Cir. B.A.P. 2007).  To prevail on its claim, Plaintiff must show that (1) Defendant made a false oath in connection with his bankruptcy case, (2) regarding a material fact, and (3) that he did so knowingly and fraudulently.  *Id.; see also Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. B.A.P. 2005) (utilizing the same test, but dividing it into four distinct elements).

Plaintiff bears the burden of proving by a preponderance of the evidence that Defendant's discharge should be denied.  Rule 4005; *Khalil*, 379 B.R. at 172.  Discharge provisions in the Code are liberally construed in favor of debtors and strictly against the person objecting to discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986); *Hopkins v. Hughes (In re Hughes)*, 349 B.R. 72, 77 (Bankr. D. Idaho 2006). "That does not, however, change the preponderance of evidence standard. Rather, it has been held to mean that actual, rather than constructive, [fraudulent] intent is required."  *Khalil*, 379 B.R. at 172 (citing *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 560 (Bankr. S.D. Cal. 1996).

MEMORANDUM OF DECISION - 7

1.  <u>False Oath</u>.

Plaintiff must first show that Defendant made a false statement or omission. To do so, Plaintiff points to two distinct omissions in Defendant's bankruptcy filings: (1) the failure to disclose Killian as a creditor in the schedules; and (2) the failure to disclose the payments made to Stokes and Savoy in response to question number three in the SOFA. Defendant denies any wrongdoing, explaining that he felt he did not need to disclose this information because he did not consider Killian to be his creditor, nor did he perceive the payments to Stokes and Savoy as being made by him.

In this regard, Defendant's argument is not unlike the debtor's arguments in *Khalil*. In that case, the debtor borrowed money from several relatives, but did not list them as creditors in his schedules because he felt they would not "come after" him for the money. *Khalil*, 379 B.R. at 168. Notwithstanding what the debtor allegedly believed, the Panel pointed to

MEMORANDUM OF DECISION - 8

the broad definition of "creditor" and "claim" in the Code[6] and concluded that these relatives were in fact the debtor's creditors. *Id.* at 172.

Here, Defendant testified that he did not view Killian as a creditor. However, he also acknowledged that he wanted to pay Killian back at some point because he is his father-in-law. In Idaho, indebtedness incurred by a spouse during marriage is presumed to be a community obligation. *Simplot v. Simplot*, 526 P.2d 844, 851 (Idaho 1974). As in *Khalil*, regardless of how Defendant viewed Killian, for bankruptcy purposes, Killian was Defendant's creditor. Debtor should have listed Killian as a creditor in Debtor's schedules.

The Court also concludes that the payments to Stokes and Savoy should have been disclosed. Defendant explained that he did not believe these payments needed to be detailed in his SOFA because he felt it was

---

[6] A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]" 11 U.S.C. § 101(5)(A).

MEMORANDUM OF DECISION - 9

not his money that was used to make the payments.  This argument also lacks merit.

Killian gave Ms. Warr explicit instructions to use $50,000 of the money he gave her to pay the debt to Stokes and Savoy.  As noted above, this was a community obligation of Defendant and Ms. Warr.  Moreover, after receiving Killian's check, she deposited it into the Warrs' joint checking account.  Again, in Idaho, funds in a joint bank account are presumptively the property of the owners of the account.  *Idaho First Nat. Bank v. First Nat. Bank of Caldwell*, 340 P.2d 1094, 1098 (Idaho 1959).  The two cashier's checks were then drawn from funds in that account, and delivered to Stokes and Savoy.  These transactions are plainly identified in the Warrs' bank records.  Exs. 101, 201.  These payments occurred within ninety days of Defendant's bankruptcy, and should have been disclosed in response to the question about recent transfers of property in his SOFA.[7]

---

[7] Question 3 of the SOFA provides, in pertinent part:

> List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the

MEMORANDUM OF DECISION - 10

Defendant executed his bankruptcy petition, schedules and SOFA under penalty of perjury. His failure to disclose Killian as a creditor, or the payments made to Stokes and Savoy satisfies the first element for a claim under § 727(a)(4)(A), *i.e.*, that Defendant made a false statement or omission in connection with his bankruptcy case.

2. <u>Materiality</u>.

To be actionable, a false statement or omission must involve a material fact. "A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *Khalil*, 379 B.R. at 173 (quoting *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. B.A.P. 1999). Under this broad test, it is clear that Defendant's transactions with his father-in-law and his friends are material, and Defendant makes no argument to the contrary. *See Coombs*, 193 B.R. at 566 (distinguishing between the broad test of

---

> commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600.

MEMORANDUM OF DECISION - 11

materiality and the narrower test of intent).

    3. <u>Knowing and Fraudulent Intent</u>.

The final element focuses upon the debtor's intent. To prevail, Plaintiff must show that Defendant "knowingly and fraudulently" made a false oath or account. 11 U.S.C. § 727(a)(4)(A). Both knowing and fraudulent intent are required. As another court explained:

> [A] debtor does not necessarily act with fraudulent intent even if he knowingly makes a false oath, and § 727(a)(4)(A), by requiring both knowledge and the intent to defraud, implicitly acknowledges that fact.

*Khalil*, 379 B.R. at 174 (quoting *United States v. Sumpter (In re Sumpter)*, 136 B.R. 690, 696 (Bankr. E.D. Mich. 1991)). A debtor "acts knowingly if he or she acts deliberately and consciously." *Roberts*, 331 B.R. at 883 (citing Black's Law Dictionary 888 (8th ed. 2004)). Here, the evidence is clear that Defendant was well aware that his wife received and deposited the check from Killian in their joint bank account and subsequently made payments to Stokes and Savoy. He made a knowing decision not to include these transactions in his bankruptcy schedules and SOFA, and the Court so

MEMORANDUM OF DECISION - 12

finds.

With respect to fraudulent intent, the elements of a claim under § 727(a)(4)(A) substantially overlap the elements of common law fraud,[8] except that "materiality replaces the elements of reliance and proximately caused damage[.]" *Roberts*, 331 B.R. at 884. Thus, to succeed in its claim, Plaintiff must prove: (1) that Defendant made false statements or omissions in his bankruptcy schedules; (2) that at the time he knew they were false; and (3) that the false statements or omissions were made with the intention and purpose of deceiving his creditors. *Khalil*, 379 B.R. at 173 (citing *Roberts*, 331 B.R. at 884).

Constructive fraudulent intent is insufficient to warrant denial of

---

[8] The Ninth Circuit described the elements of common law fraud as:

> The creditor must show that (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditors; (4) that the creditors relied on such representations; (5) that the creditors sustained loss and damage as the proximate result of the representations having been made.

*Anastas v. American Savs. Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir. 1996).

MEMORANDUM OF DECISION - 13

discharge; actual fraudulent intent is required. *Roberts*, 331 B.R. at 884. However, a debtor's fraudulent intent may be established by circumstantial evidence or by inferences drawn from his course of conduct. *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir. 1985); *Wills*, 243 B.R. at 64. The requisite intent may be found from the surrounding circumstances, for example, where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth. *See Wills*, 243 B.R. at 64.

> The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an *inference of fraud* if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal.

*Khalil*, 379 B.R. at 175 (quoting *Coombs*, 193 B.R. at 565-66).

Defendant offers a novel defense in response to Plaintiff's

MEMORANDUM OF DECISION - 14

arguments that he acted fraudulently. He contends that because the funds used to pay Stokes and Savoy were specifically earmarked by Killian for that purpose, Defendant lacked the requisite intent to defraud.

The earmarking doctrine has its genesis in preference litigation, where it may be a defense to a transferee's liability. This defense in that context is justified because when a third party lends money to a debtor for the specific purpose of paying another selected creditor, "the funds are neither controlled by, nor belong to, the debtor. The money never becomes part of the debtor's assets; rather, the transaction merely substitutes one creditor for another without diminishing the value of the bankruptcy estate." *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.)*, 16 F.3d 313, 316 (9th Cir. 1994) (citing *Grubb v. Gen. Contract Purchase Corp.*, 94 F.2d 70, 72-73 (2d. Cir. 1938)).

The earmarking doctrine was originally applied "'in cases where the new creditor providing new funds to pay off the old creditor, was himself also obligated to pay that prior debt.'" *Kemp Pac. Fisheries*, 16 F.3d at 316 n.2 (quoting *McCuskey v. Nat. Bank of Waterloo (In re Bohlen Enter., Ltd.)*, 859

MEMORANDUM OF DECISION - 15

F.2d 561, 565 (8th Cir. 1988)).  In other words, the doctrine originally applied when the new creditor was a guarantor of the debtor's obligation.  The doctrine was later extended to situations where the new lender was not a guarantor.  *Id.* (citing *Stonitsch v. Wood & Hudson Bank (In re Bergman)*, 48 B.R. 666 (Bankr. W.D.Mo. 1986)).  Courts have been reluctant to extend application of the earmarking defense beyond these boundaries.  *Id.* (citing *In re Bohlen*, 859 F.2d at 566; *McGoldrick v. Juice Farms Inc. (In re Ludford Fruit Prods. Inc.)*, 99 B.R. 18, 21 (Bankr C.D. Cal. 1989)).

Defendant's earmarking argument is misplaced here.  Defendant was unable to cite any authority where this doctrine has been relied upon by a bankruptcy court outside of the context of a defense to a preferential transfer.  The Court has located no such cases.  This Court declines to blaze a new trail and be the first to apply the earmarking doctrine in an action to deny discharge under § 727(a)(4)(A).

Though earmarking is not a defense in this action, it nonetheless remains Plaintiff's burden to establish by a preponderance of the evidence that Defendant acted with actual intend to defraud.  Plaintiff argues that,

MEMORANDUM OF DECISION - 16

viewing all the circumstances surrounding these transactions, Defendant possessed the requisite intent to defraud. The Court is not convinced.

Plaintiff contends that Defendant and his wife were keenly aware of these transactions, and that they were both "stressed-out" about their situation. Plaintiff then argues that to file for bankruptcy shortly after the payments were made and to suddenly forget about the loans is extremely suspicious.

While Plaintiff's assumptions seem plausible, even if true, they do not show that Defendant engaged in a "pattern of falsity" or acted in "reckless indifference to or disregard of the truth." *Khalil*, 379 B.R. at 175 (citing *Wills*, 243 B.R. at 64). Moreover, nothing in the evidence or testimony reveals any nefarious motive or reason why Defendant would want to conceal these transactions from the bankruptcy trustee or his creditors. To be sure, Plaintiff is not required to show that Defendant had a motive to defraud, but evidence of such a motive may support a finding of actual fraud. *Id.* at 176. Arguably, had Defendant disclosed these transfers the bankruptcy trustee could have attempted to avoid the

MEMORANDUM OF DECISION - 17

payments to Stokes and Savoy as preferential transfers under § 547. However, Defendant testified without contradiction that he did not discuss these transactions with his attorney, and the Court is skeptical that Defendant would have appreciated the scope of a bankruptcy trustee's avoidance powers absent the guidance of his attorney.  Plaintiff's argument that Defendant was emotionally motivated to protect his father-in-law is insufficient to prove that he acted with actual intent to defraud.

While the evidence is subject to varying interpretations, the Court is not persuaded that by omitting these transactions from his schedules and SOFA Defendant engaged in the type of bad conduct that justifies denial of his discharge.  Plaintiff has not shown that Defendant acted with the requisite actual intent to defraud his creditors or the bankruptcy estate.

### *Conclusion*

Plaintiff did not prove by a preponderance of the evidence that Defendant knowingly and fraudulently made a false oath in connection with his bankruptcy case.  A separate judgment will be entered dismissing

MEMORANDUM OF DECISION - 18

this action with prejudice.

Dated: February 6, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge